UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS DIVISION
CASE NO.: 2:09-CR-20119-008-JWL



JAMES ANTHONY CLARK,
    Defendant/Movant,

v.

UNITED STATES OF AMERICA,
    Plaintiff/Respondent.
_____/

PETITIONER'S REPLY
TO GOVERNMENT'S 02/09/15 RESPONSE
RESPOPNSE #1
AND
VARIOUS MOTIONS TO VACATE, SET ASIDE, OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C.
SECTION 2255

NOW COMES, Movant, James Anthony Clark ("Clark"), appearing pro-se, and timely replies to the Government's Response to Defendant's Various Motions to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. Section 2255 ("GR") as follows:

PRELIMINARY STATEMENT

As a preliminary matter, Clark respectfully requests that the Court be mindful that pro-se pleadings are to be construed liberally. See Garza v. Davis, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010); Estelle v. Gamble, 429 U.S. 106 (1976); Haines v. Kerner, 404 U.S. 519 520 (1972).

The twenty-three (23) page GR is divided into six (6) sections:

1.

(A) Statement of the Facts; (B) Argument; (C) Trial Counsel; (D) Sentencing Counsel; (E) Appellate Counsel; and (F) <u>Alleyne</u> Argument. Some of the sections also include subsections and subparts. Clark will reply sequentially to these sections, subsections and subparts of the GR as follows:

## STATEMENT OF THE FACTS

In the first section of the GR, the Government recites a fair reading of the facts in this case. See Doc. 1108 at 1-4.[1] However, Clark does take exception to the Government's contention that his § 2255 Motion was filed one day late, on December 03, 2014, because of that post mark on the envelope. According to Rule 6(a)(1)(A) of the Rules of Civil Procedures, Clark had until December 02, 2014, to file his § 2255 Motion. Regardless, as previously stated, Clark respectfully submits again that he placed his § 2255 Motion in the prison mail box on December 02, 2014. The prison should have post-marked that date on his Motion. As such, his Motion was timely filed.

## ARGUMENT

In this section of the GR, the Government first restates Clark's grounds raised in his § 2255 Motion <u>ID.</u> at 4-5. Next, the Government adequately states the legal standard of review for § 2255 Motions and for determining claims of ineffective assistance of counsel. <u>ID.</u> at 5-7. Clark does not take any exception to this section of the GR.

## TRIAL COUNSEL

This section of the GR is divided into three subsections: (1) <u>Failure to Advise</u> of the Consequences of Pleading Guilty Versus Pro-

---

1. "Doc" refers to the Docket Report in the U.S. District Court for the District of Kansas, Kansas Division, in criminal number 2:09-CR-20119-008-JWL, which is immediately followed by the Docket Entry Number and Page Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number. "TT" refers to the Trail Transcript in this case, which is immediately followed by the Page Number.

ceeding to Trial; (2) Failure to Conduct Pretrial Investigation and Research Applicable Law; and (3) Failure to File Any Substantive Pretrial Motions. ID. at 8-19.

1. Failure to Advise of the Consequences of Pleading Guilty Versus Proceeding to Trial.

In this subsection, the Government challenges Clark's claim that his attorney, John W. Kerns ("Kerns"), failed to inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial. ID. at 8-10. Specifically, the Government challenges Clark's claim that he was unaware of the maximum sentence he faced. ID. at 8. The Government further argues that "if attorney Kerns incorrectly predicted the Defendant's sentence in this case, such would not be a sufficient basis upon which to fine ineffective assistance of counsel." ID. at 9.

With regard to being informed of a maximum sentence, the Government contends that Clark was informed of his maximum sentence because of the arraignments held in front of U.S. Magistrate Judge O'Hara, and because he was tendered a copy of the Second and Third Superseding Indictments, which contained the maximum and minimum penalties associated with the conspiracy charged. It also erroneously claims these arraignments were "similar to a plea colloquy at a Rule 11 Hearing." ID. at 8. Clark takes exception to the Government's assertions. First of all, Clark was a layman of the Law, and he did not have an understanding of the legal documents given to him. As such, he wholly relied on Kern's advise and his predictions of the potential sentence he faced if he pled guilty or proceeded to trial. However, Clark was never properly informed of the maximum sentence

that he faced if he proceeded to trial or pled guilty by Kerns. It is essential to note that the Government provided a sworn Affidavit from Clark's sentencing counsel, Gary D. Stone ("Stone"), but did not submit a sworn Affidavit from Kerns refuting Clark's claim.[2] As such, these facts are in dispute and an Evidentiary Hearing is necessary to resolve this issue.

Contrary to the Government's contention that an arraignment is similar to a Rule 11 Hearing, Clark submits that an arraignment is distinguished from a Rule 11 Hearing. The purpose of an arraignment is set forth in rule 10(a) of the Federal Rules of Criminal Procedure ("Fed.R.Crim.P."), which require that an arraignment must be conducted in open court and must consist of: (1) ensuring that the Defendant has a copy of the indictment or information; (2) reading the indictment or information to the Defendant or stating to the Defendant the substance of the charge; and (3) asking the Defendant to plead to the indictment or information. In this case, the record is clear that requirements of Rule 10(a)(1) and (a)(3) were satisfied. Clark was given a copy of the indictment. While representeed by counsel, he pled not guilty to all indictments. Upon his attorney's advice, he waived the reading of all indictments.

"Rule [11] requires the Court to accept a guilty plea only after engaging in an extensive colloquy advising the Defendant of his rights and questioning the Defendant to be sure he understands those rights and is entering the plea voluntarily." United States v. Villa-Vazquez, 536 F.3d 1189, 1199 (10th Cir. 2008). Under Rule 11(b)(1) Fed.R.Crim. P., before accepting a plea of guilty, a judge must address the Defendant personally in open court to inform the Defendant of, and deter-

---

2. Relying on ABA Comm. on Ethics and Prof'l Responsibility. Formal Op. 10-456(2010), trial counsel, John W. Kerns, refused to provide an affidavit or statement to the Government regarding his representation of Clark.

mine that he understands: (1) the right to plead not guilty, Fed. R. Crim.P. 11(b)(1)(B); (2) the right to a jury trial Fed.R.Crim.P 11(b)(1)(C); (3) the right to be represented by counsel, Fed.R.Crim.P. 11(b)(1)(D); (4) the nature of the charge to which the Defendant is pleading Fed.R.Crim.P. 11(b)(1)(G); (5) any mandatory minimum penalty Fed. R.Crim.P. 11(b)(1)(I); (6) any maximum possible penalty, Fed.R.Crim. P. 11(b)(1)(H); (7) the Defendant's waiver of certain trial or appeal rights if the Court accepts the Defendant's plea, Fed.R.Crim.P. 11(b)(1)(F); and (8) the Government's right, in a prosecution for perjury or false statement, to use against the Defendant any statement that he gives under oath, Fed.R.Crim.P. 11(b)(1)(A). In addition, before accepting the Defendant's plea, the Court must ensure that the plea is voluntary and did not result from force, threats, or promises (other than those included in the plea agreement). See Fed.R.Crim. P. 11(b)(2). The Court must also determine that there is a factual basis for the plea. See Fed.R.Crim.P. 11(b)(1)(3). For the plea to be valid, an adequate factual basis needs to be established only for the elements of the substantive criminal offense(s). See United States v. Ferrel, 603 F.3d 758 (10th Cir. 2010).

Based on the above, it is clear and obvious that an arraignment under Rule 10(a) and a Rule 11 Hearing are distinguished from each other and are not similar by any stretch of the imagination.

The Government next attempts to let Kerns off the hook for incorrectly predicting Clark's sentence in this case by claiming that this would not be a sufficient basis upon which to fine ineffective assistance of counsel. In support of this contention, the Government cites United States v. Melcher, No. 10-5004,2010 WL 1971913, at *2 (10th Cir. May 18, 2010), an unpublished order denying a Certifi-

5.

cate of Appealability ("COA"), and United States v. Harrison, No. 09-7113, 2010 WL 1225617, at *4 (10th Cir. March 31, 2010), another unpublished order denying a COA. These cases in conflict with United States v. Washington, 619 F.3d 1252 (10th Cir. 2010). In Washington, the Tenth Circuit reversed the District Court's denial of the Defendant's § 2255 Motion holding that concludes that counsel's failure to understand the basic mechanics of the sentencing guidelines and, in particular, his failure to advise the Defendant regarding the impact of relevant conduct on his potential sentence prior to meeting with the probation officer, amounted to constitutionally deficient performance under Strickland v. Washington, 466 U.S. 668 (1984). The Washington Court relied on United States v. McCoy, 215 F.3d 102, 108 (D.C. Cir. 2000), and United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992). As the Court pointed out in McCoy:

> McCoy's counsel failed to follow the formula specified on the face of the Guidelines. Of course not every error made in applying the Guidelines amounts to deficient performance under the standard of Strickland but, as a sister circuit pointed out some years ago....'familiarity with the structure and basic content of the Guidelines....has become a necessity for counsel who seek to give effective representation.'

McCoy, 215 F.3d at 108 (quoting Day, 969 F.2d at 39, 43).

McCoy and Day thus distinguish ordinary errors in applying the guidelines from complete unfamiliarity with their basic structure and mechanics and conclude that the latter may amount to ineffective assistance of counsel. As the Court said in Day:

> "[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer. See Hill v. Lockhart, 474 U.S. 52, 56-57 (1985)(voluntariness of guilty plea depends on adequacy of counsel's advise), Von Moltke v. Gillies, 332 U.S. 708, 721 (1948)("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to

> offer his informed opinion as to what plea should be entered.").
> Knowledge of the comparative sentence exposure between standing
> trial and accepting a plea offer will often be crucial to the
> decision whether to plead guilty. See Williams v. State, 326
> MD. 367, 605 A.2d 103 (1992)(counsel's conduct was constitu-
> tionally deficient in failing to advise petitioner of mandatory
> 25-year sentence upon conviction at trial when offer to plead
> guilty to lesser offense involved exposure only to ten-year sen-
> tence); Commonwealth v. Napper, 254 Pa.Super. 54, 385 A.2d 521
> (1978)(counsel ineffective in giving no advice about desirabil-
> ity of plea offer with three-year maximum sentence when trial
> risked ten to forty years and defendant's chances of acquittal
> were slim).

See Day, 969 F.2d at 43 (emphasis added). Similarly, knowledge about the structure and mechanics of the sentencing guidelines and the sentencing process will often be crucial to advising a defendant about how to conduct himself through the sentencing process. Accordingly, we hold that a defendant may prevail on the first prong of the Strickland test if he can establish that counsel failed to understand the basic structure and mechanics of the sentencing guidelines and was therefore incapable of helping the defendant to make reasonably informed decisions throughout the criminal process. See Washington, 619 F.3d at 1260. This was Kern's first federal conspiracy case.

In light of the above, Kerns grossly underestimated Clark's sentence so that he could make an informed decision of whether to plead guilty or proceed to trial. Therefore, Kerns was ineffective for this failure and Clark was prejudiced by receiving a much harsher sentence by proceeding to trial.

2. Failure to Conduct Pretrial Investigation and Research Applicable Law.

This subsection is divided into two subparts: (a) Failure to Investigate and (b) Failure to Research Applicable Law. ID. at 10-17.

(a) Failure to Investigate

7.

In this subpart, the GR states that "Defendant's failure to fully outline what pretrial investigation was requested and not undertaken, leaves the issue lacking specificity. The defantant has failed to show how defense counsel's not calling witnesses prejudiced his defense." ID. at 11.

Clark adopts by reference his previous argument on this ground contained in his § 2255 Motion. Clark rejects the Government's contention because had Kerns interviewed withnesses that he requested he interview as possible defense witnesses, he could have refuted the testimony of the Government's key witnesses. For example, one of the witnesses that Clark requested Kerns to interview was Blake Davis ("Davis"). He could of disputed Rachael Teasley's testimony, which the Government relied on heavily. Testimony by Davis would have raised a reasonable doubt as to her credibility as a witness and her testimony as well as her motive for testifying against Clark.

The GR also attempts to play down the sworn Affidavits of Ledford and DuPaul. ID. at 12. DuPaul and Clark lived together during the time of conspiracy. She testified at trial and attested to in her sworn Affidavit that Clark had never, to the best of her Knowledge, possessed methamphetamine. Had Kerns interviewed both DuPaul and Ledford, he would have seen the value their testimony could bring to the defense in refuting the testimony of the Government's witnesses and in creating a reasonable doubt by the jury. There were other leads and potential witnesses that Clark brought to Kerns attention that he did not follow up on. Kerns should have moved the Court for a Court appointed investigator to follow up on those leads. Had he done so, he could have potentially found ad-

8.

ditional evidence not included in the Governmant's case file.

Accordingly, it is respectfully suggested that the best solution to resolve these facts in dispute and to expand an incomplete record would be for the Court to hold an Evidentiary Hearing.

(b) Failure to Research Applicable Law

In this subpart of this subsection, the GR states that "Defendant claims he requested counsel to object to the venire based on their being Caucasian and predominantly teachers, but counsel refused because the defendant himself is also white." Defendant contends that his counsel was ineffective in failing to object or otherwise challenge the impaneling of an all-white jury. ID. at 14.

This ground was adequately briefed in Clark's § 2255 Motion and Memorandum. He adopts that argument by reference in whole.

Accordingly, an Evidentiary Hearing should be held to resolve facts in dispute and to expand an incomplete record.

3. Failure to File Any Substantive Pretrial Motions

In this subsection, the GR states that "the defendant next argues ineffective assistance of counsel for his failure to file substantive pretrial motions, specifically a motion to sever. Defendant has not shown that the lack of a motion to sever prejudiced his case, that is, that a motion to sever would have been successful and would have changed the outcome of the proceeding." ID. at 17.

Contrary to the government's contention, a fair reading of the Docket Report in this case easily reveals that Kerns never filed any substantive Pretrial Motions with the exception of a Motion for new counsel. This lack on preparation and failure to file basic pretrial motions resulted in a failure of putting the Government's case-in-

9.

chief to any kind of a reasonble adversarial test. The Supreme Court has long recognized that if counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," the adversarial process itself becomes persumptively unreliable. See United States v. Cronic, 466 U.S. 648, 659 (1984); see, e.g., United States v.Collins, 430 F.3d 1260 (10thCir. 2005). This can only be deemed as deficient performance. Without such an adversarial testing of the Government's case, it was virtually impossible for Kerns to communicate, inform and correctly advise Clark as to whether he should plead guilty or proceed to trial. Had Kerns conducted and adequate pretrial investigation, he could have advised Clark that the Government's evidence was overwhelming, and that his best option for him would have been to plead guilty to Count 1 of the Third Superseding Indictment without a plea agreement. However, because Kerns had failed to research the facts and applicable law of the case, he was unprepared and unable to give Clark any kind of meaningful or competent legal advice (deficient performance), which resulted in Clark proceeding to trial and receiving 292 months of imprisonment (prejudice). Clark was actually prejudiced based on Kern's deficient, incompetent, faulty, flawed, and uninformed advice. In his defense, Kerns claimed that he would merely adopt the motions of Clark's co-defendants and that he would therefore, suffer no prejudice. As such, he rode the coattails of his co-defendants. The argument contained in Clark's original § 2255 Motion and Memorandum adequately briefs this ground and is adopted here by reference. See Doc. 1096 at 15-17.

Accordingly, Clark's conviction and sentence should be vacated and he should be allowed to plea anew.

## SENTENCING COUNSEL

In this section, the GR attempts to refute Clark's claim of ineffective assistance of sentencing counsel by providing as Affidavit by Gary Stone ("Stone"). Clark's sentencing counsel, in response to his claim of ineffective assistance of counsel at sentencing. The GR states that the "defendant's allegations are refuted by Attorney Stone's Affidavit and by the record and thus should be denied." Doc. 1108 at 18.

Clark respectfully submits that this ground is adequately briefed in his original § 2255 Memorandum. See Doc. 1096 at 25-26. He adopts that argument by reference here in rejection of the Government's contention that Clark's "claim is therefore baseless and should be denied."

## APPELLATE COUNSEL

In this section, the GR claims that the issues that Clark requested his appointed Appellate Attorney, Elizabeth Harris ("Harris"), to raise were simply without merit and it was not ineffective assistance of counsel to refuse to pursue meritless claims on Appeal. ID. at 21. On Direct Appeal, Harris raised three issues: (a) there was a fatal variance between his indictment and the evidence; (b) the District Court's drug quantity calculation at sentencing was incorrect; and (c) the Court erred by refusing to give Clark a two-level downward offense admustment for his minor role in the conspriacy. The Government claims in the GR that "Harris advanced the arguments that she, in her educated legal opinion, had the best likelihood of success. Appellate counsel's failure to adopt defendant's argu-

11.

ments was neither a performance deficiency that implicated the Sixth Amendment nor prejudicial to the defendant...." ID. at 22.

Contrary to the Government's erroneous contention, none of Harris' arguments prevailed on Appeal and Clark's Appeal was affirmed on the issues raised by her. In this Appeal, Clark urged Harris to raise the issue of the District Court's failure to grant his Motion for new trial counsel because of the imcompetence and deficiencies of his trial counsel. The Court denied his Motion and Clark was stuck with Kerns or faced self-representation. Had Kerns had a clue about what he was doing, he would have seriously advised Clark to plead guilty to the Third Superseding Indictment without a plea agreement. Therefore, he would have kept his Appeal and he could have been eligible for a reduction for acceptance of responsibility. However, with Kern's flawed and deficient advice, this was impossible. The second issue which should have been raised was the composition of the jury pool as previously argued in this Memorandum. Obviously, such an error had Due Process and Sixth Amendment implications. Had Harris raised these issues on Appeal, there is a reasonable probability that he would have won his Appeal. These arguments that Clark sought Harris to raise were stronger and would have had a better chance to succeed to Appeal. Clark by reference adopts his argument in his § 2255 Memorandum. See Doc. 1096 at 27-29.

## CONCLUSION

For the above and foregoing reasons, Clark's conviction and sentence should be vacated so that Clark can plea anew. In the alterantive, it is respectfully requested that the Court hold an Eviden-

tiary Hearing so that Clark may further prove his meritorious grounds for relief, resolve facts in dispute between the parties and expand an incomplete record.

Respectfully Submitted,

5/4/2015
Executed On

James Anthony Clark
#27732-018
FCC-COLEMAN-MEDIUM
POB 1032
COLEMAN, FLORIDA
33521-1032
Appearing Pro-Se