IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS DIVISION

JAMES ANTHONY CLARK,

    Defendant/Movant,

vs.    No. 2:09CR20119-008-JWL

UNITED STATES OF AMERICA,

    Plaintiff/Respondent.

### MOVANT'S REPLY TO ATTORNEY JOHN KERNS' AFFIDAVIT IN RESPONSE TO DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT HIS SENTENCE

COMES Movant, James Anthony Clark ("Clark"), appearing *pro se*, and timely replies to Attorney John Kerns' Affidavit in Response to Defendant's Motion to Vacate, Set Aside or Correct His Sentence ("KA") as follows:

### PRELIMINARY STATEMENT

As a preliminary matter, Clark respectfully requests that the Court be mindful that *pro se* pleadings are to be construed liberally. See *Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### I. REPLY

In the KA, Kerns has responded with 56 points. Clark will reply sequentially as follows:

1. Clark does not take exception to this point.

2. Clark does not take exception to this point.

3. Clark does not take exception to this point.

4. Clark does not take exception to this point.

5. Clark does not take exception to this point.

6. Clark does not take exception to this point.

7. Clark does not take exception to this point.

8. Clark does not take exception to this point.

9-10. With regard to the visitation times Kern listed at the CCA Facility and the U. S. Marshal's holding area, Clark requested that the Correctional Officers at the CCA Facility and U. S. Marshall's check their visitation records to determine whether Kerns had visited him during the specified times in the KA. In their response, it was determined that Kerns did not visit on all of the dates and times listed in the KA. As such, Clark filed a Motion to Supplement the Record with his response. Therefore, Clark challenges the amount of time that Kerns claimed he visited him prior to trial. It is his recollection that he did visit him on one or two occasions at the CCA and at the U. S. Marshal's holding area for a very minimal time.

11. Clark has no knowledge whether Kerns participated in plea negotiations with the prosecutor on October 15, 2010.

12. Clark does not take exception to this point.

13. Clark has no knowledge whether or not on October 24, 2010 Kerns calculated his sentencing guideline range and minor role, and researched bill of particulars, severance, motions in limine. However, if he did same, Clark does not understand why a motion to sever was not filed on his behalf. He was never informed about this matter.

14. Kerns claims that on October 25, 2010, he reviewed sentencing ranges, writing exemplar, and statutes with Clark. Clark only recollection of this meeting was that Kerns came for the writing exemplars and left immediately after.

15. Kerns attached what he labeled as Exhibit "A", which includes notes (albeit undated) reflecting a prediction of Clark being placed in a 36 or 38 base number along with exclusion of a minimal role, minor role, or "in between" reduction.

Clark replies that Kerns' notes were mostly unreadable and he was not able to understand them for the most. However, according to them a severance motion was warranted. With regard to the offense level, it was Assistant U. S. Attorney Eskirdy who gave him the offense level. Further, according to Kerns' notes Clark "was substantially less culpable than the average participant" in this case and, "accountable under USSG § 1B.1.3 only for the quantity of drugs he personally

2

transported." As such, Kerns came up with most of his numbers because that's what the government gave him. In fact, his strategy, numbers and facts provided to him by the AUSA Eskirdy or my co-defendants' counsel. He failed to investigate anything. He merely used the numbers that the government supplied to him.

16. According to KA, Kerns' notes also show a diagram illustrating a plea agreement, an option to plea without an agreement or a jury trial option. Notes also allegedly show relevant conduct, a 3 point deduction if the defendant pleas and cooperation possibilities. See Exhibit" A."

Clark replies that the above is not clear at all in his notes on page 3. Instead, he writes "Denies Act" under April 22, 2009. But yet never looks into the matter, this is why Tyson's affidavit is important because he says Clark had moved out before then.

17. Kerns claims that on November 24, 2010 counsel discussed the contents of defendant's letter with Clark.

Clark replies that his letters to Mr. Kerns ask for a motion to sever, information on his investigations and a witness list. They also discuss theories of defense and strategy. All of his letters were ignored. In fact, after giving Kern's his witness list, the government went and contacted most of them of the witnesses listed on that list.

18. Kerns' states that on January 14, 2011, counsel reviewed three new witness statements with Mr. Clark.

Clark replies that he has no recollection of such a meeting with Kerns on that date, or reviewing any witness statements with him.

19-21. Kerns claims that on January 17, 2011, he reviewed proffers with Mr. Clark, and on January 18, 2011, he reviewed strategy and defense theory with Mr. Clark.

Clark replies that these dates are in dispute, and that he does not have any recollection of reviewing any proffers, defense strategy or any new witness with Kerns on those dates or on any other dates.

3

22. On February 12, 2011, Kerns claims that he discussed closing arguments and the defendant's right to take the stand with Mr. Clark.

Clark replies that the trial was in session at this time, and he does not recall any conversation regarding closing argument or him taking the stand on his own behalf. He recalls his attorney advising him that he could not take the stand. However, there was not any discussion of same.

23-25. Kerns lists dates and the amount of time which he allegedly reviewed discovery in this case, conducted legal research and prepared for trial.

Clark replies that if he did any of these things, he did not do it with him, make him privy to any of the discovery, legal research or discuss trial strategy and any kind of affirmative defense on behalf of him. Clark was completely in the dark on these subject from the beginning to the end of trial. In fact, there was a total lack of communication between Clark and Kerns. He did not permit Clark to participate in any of the above to his detriment.

26-27. Kerns claims that on on December 27, 2010, he reviewed the cooperation book at the United States Attorney's Office and that on January 14, 2011, he reviewed three new cooperation notebooks.

Clark replies that on the above dates that he did not have any communication with Kerns and was not provided any information about cooperation notebooks from Kerns.

28. The KA claims that on January 17, 2011, Kerns met with Michael Clarke, a codefendants' counsel attorney, at his office.

Clark has no information about this meeting.

29. Kerns claims that Clark was insistent at trial based on his position that he did not participate in a conspiracy.

Contrary to this erroneous claim, Clark's letter to Kerns verify that this is not the case.

30-34. Kerns claims that Clark requested an investigator be appointed. Kerns explained to Clark that the use of an investigator was unnecessary, and he has no recollection of the defendant communicating the need for an investigation concerning the need to interview witnesses. However,

4

Kerns recalls that Clark expressed his desire for an investigator to explore his bank withdraw and hospital stay dates. Further, Kerns deemed these issues were irrelevant based on the existing accusations and evidence.

Clark did request that an investigator be appointed to conduct an independent investigation of his case. However, Kerns stated that he would handle the investigation and that a private investigator was not necessary. Clark expressed in his letters written to Kerns that, among other things, an investigator was necessary to show he wasn't at the house on April 22, 2009, and to talk to the witnesses he handed over to the government. The reason that this date was important is because April 22, 2009, was the only nexus between Clark and the methamphetamine.

35-38. Kerns states that while meeting with Clark, he was provided with extensive case law, and referenced in the publication of A Portable Guide to Federal Conspiracy by Joseph M. McSorely. Clark expressed his desire for counsel to file numerous motions referred to in this publication and based on his own research. Kerns purchased this book, and after research and consideration, counsel made the determination of which motions would be filed, and counsel refused to file motions which would be deemed frivolous.

Clark replies that it is true that he requested that Kerns file numerous motions to put the government's case-in-chief to an adversarial test. None of these motions could be deemed frivolous as suggested by Kerns. However, he filed the bare bones with regard to motions and rejected most of the suggestions made by Clark, which could have been deemed frivolous.

39. Kerns states that negotiation took place with the Assistant United States Attorney.

Clark replies that he was not privy to any negotiation with the Assistant U. S. Attorney.

40. Kerns states that he reviewed a plea agreement with Clark.

Clark replies that Kerns did show him the plea agreement, but did not review it with him.

41-42. In the KA, Kerns states that the plea agreement reviewed with Clark included an extensive factual basis and noted that Clark wrote "Reviewed and Refused" then provided his signature on the first page of the plea agreement. See Exhibit "'B." Further, the defendant refused

5

to accept the plea agreement and insisted on trial.

Clark replies that he did write "reviewed and refused" because he did not believe that it was in his best interest to waive his right to appeal, or file a 2255 motion on a lawyer who he believed would not fight for him or put the government's case to any meaningful adversarial test. Further, in Clark's view, there was not any kind of plea negotiation, it was merely what the Assistant U. S. Attorney put on the table as a first plea offer, which Kerns accepted without any kind of a counter offer. As such, Clark sought an representation at trial who would argue an affirmative multi-conspiracy defense.

43-47. In the KA, Kerns states that at the pretrial status conference hearing held on January 10, 2011, Clark made an oral request for a new attorney. The Court scheduled a hearing on the matter for January 18, 2011. (Doc. 454 and 460). At that hearing, Clark stated, among other reasons, he was requesting a new attorney because his attorney did not move the Court for an investigator to be assigned to his case, that counsel lacked the necessary experience to conduct a federal jury trial, and that counsel did not visit him sufficiently. Further, that counsel took no position on Clark's motion for new counsel, and counsel recalled that he expressed to the court that no matter the ruling on the defendant's motion for new counsel, he would "lose no sleep" but would do his best for Clark if he remained as counsel. He stated that it was not "rocket science." Clark's request for new counsel was denied. Counsel also presumed a record was taken of this hearing and is available for review. (Doc. 482). Clark was convicted at trial.

Clark replies that because there was not any independent investigation conducted by Kerns in his case, because he would not move the Court for an appointed private investigator that he was wholly unprepared and did not have any kind of defense or trial strategy planned. He also would not permit Clark to be part of his own defense. There was a lack of communication between the parties. Kerns idea was to get Clark to plead out and not have to proceed to trial. As such, it is Clark's belief that he merely took the first plea offer from the government and attempted to convince Clark that pleading guilty would be in his best interest. He did not attempt to negotiate a plea agreement

6

without any appeal or 2255 motion waivers. Clark did not have any confidence in Kerns. Unfortunately, the Court did deny his motion and as Clark suspected Kerns was not prepared for trial and he was convicted.

48-51. Kerns states that Clark filed a motion to represent himself. (Doc. 564). On April 7, 2011, Kerns filed a motion to withdraw as Clark's attorney. (Doc. 620). Kerns further states that the reasons Clark included in this request included the fact that he did not visit him sufficiently, that counsel was not truthful with him concerning the legal definition of a conspiracy, and counsel repeatedly failed to provide him with access to discoverable evidence. At this point, Kerns joined in the request for new counsel, and Clark's motion was granted. (Doc. 631).

Clark replies that he recalls stating all of the above reasons for wanting to terminate Kerns as his attorney and probably more. He also recalls that he stated that Kerns obstructed his right to an independent investigation of his case.

52. Kerns states in the KA that he filed a Motion for James Hearing and Motion for Discovery of Coconspirators' PSI. Other codefendants in this case submitted a variety of additional motions. (Doc. 349 and 350).

Clark replies that he does not dispute that he filed the above referenced motions, but he failed to file a motion to sever as Clark repeatedly requested him to do.

53. Kerns states that the record does not reflect a ruling on the Motion for Discovery of Coconspirators' PSI. (Doc. 483).

Clark replies that the motion was denied because the motion was a bare bones effort and did not contain any case law.

54-55. Kerns states that counsel and counsel for the other codefendants, abided by the Court's 30-minute voir dire requirement. (Doc. 491). He further states that meaningful voir dire took place and a satisfactory jury was selected.

Clark replies that the jury may have been satisfactory to Kerns, but not to him. Clark requested that Kerns to raise issue with the jury pool, but Kerns told him that he had no grounds

because Clark was white and so were all of the jury. Of course, this was wholly erroneous because a jury is suppose to be composed of a fair cross-section of the community. It does not matter whether all of the jury is white or not. As such, Clark does not believe that the make up of his jury was composed of a fair cross-section of the community. Clark recognizes that a jury pool doesn't have to exactly match the makeup of a community. However, it has to be representative of the community. As such, the group alleged to be excluded from the jury pool is a distinctive group in the community, under-representation of the group is substantial and isn't reasonable and the under-representation is caused by a systematic exclusion of the group in the jury selection process. In this case, the fact that there were no African Americans or Hispanics on the jury was not a fair cross-section of the community.

56-57. In the KA, Kerns states that during closing arguments that he argued that Clark was an addict and a "user" but not a dealer. Counsel does recall errantly referring to Clark as a "lifetime loser," but counsel recalls correcting himself by stating to the jury Clark was a "lifetime user." Kerns further states that counsel's closing argument included the fact that this case involved guilt by association, and the case involved bargained-for testimony.

Clark replies and disputes Kern's claim that he corrected it. Kerns stated that Clark was a "looser and user." This was a weak defense. He could have expanded his argument and stated that Clark's involvement was merely a buyer-seller relationship not a distributor. However, Clark wanted a multi-conspiracy defense, which Kerns wholly rejected to the detriment of Clark.

58-59. Kerns states that counsel did inform the defendant of his risk of going to trial along with potential penalty and time Clark was facing if he pled. He further states that Clark simply refused to cooperate or plea and chose to have a trial.

Clark replies that it is his recollection that Kerns failed to give him the relevant circumstances and likely consequences if he pled guilty as opposed to proceeding to trial. Kerns knew that Clark was dissatisfied with the first and only plea offer from the government because of the appellate and 2255 waivers in the offer. Kerns failed to further negotiate a better agreement without the waivers.

Because of Kerns lack of legal research, lack of communication, lack of an independent investigation, it was Clark's belief that if he proceeded to trial and he was convicted that he would still have his appeal and 2255 motion in tact to overcome the errors and Kerns' ineffective assistance of counsel. Clark felt like Kerns did the minimum and his acts and omissions forced him to proceed to trial. The Court's refusal to appoint another attorney put him between a rock and a hard place. His only chance was to proceed to trial. He had a complete lack of confidence in Kerns' representation.

## CONCLUSION

For the above and foregoing reasons, Clark's conviction and sentence should be vacated so that Clark can plea anew. In the alternative, it is respectfully requested that the Court hold an evidentiary hearing so that Clark may further prove his meritorious grounds for relief, resolve facts in dispute between the parties and expand an incomplete record.

Respectfully submitted,

JAMES ANTHONY CLARK
REG. NO. 27732-018
FCI COLEMAN
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 1032
COLEMAN, FL 33521
Appearing *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on Sept. 2nd, 2015, a true and correct copy of the above and foregoing Movant's Reply to Attorney John Kerns' Affidavit in Response to Defendant's Motion To Vacate, Set Aside or Correct His Sentence to Sheri Catania, Assistant United States Attorney at 500 State Avenue, Suite 360, Kansas City, Kansas 66101.

JAMES ANTHONY CLARK

9