# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

United States of America,

        Plaintiff,

v.                              Case No. 09-20119-08-JWL
                                        14-2615-JWL

James Anthony Clark,

        Defendant.

## MEMORANDUM & ORDER

James Clark was indicted on one count of conspiracy to distribute and possess with intent to distribute cocaine, methamphetamine, and marijuana. Most of Mr. Clark's co-conspirators entered pleas of guilty and cooperated with the government. Mr. Clark, along with co-defendants Justin Selby and Alfred Anaya, proceeded to trial. A special jury verdict indicated that Mr. Clark was convicted of the charge as to methamphetamine and marijuana. The court sentenced Mr. Clark to 292 months in prison and the Circuit affirmed Mr. Clark's sentence. *See United States v. Clark*, 529 Fed. Appx. 927 (10th Cir. 2013).[1]

This matter is now before the court on Mr. Clark's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 1095); Mr. Clark's motion for evidentiary hearing in support of his § 2255 petition (doc. 1097); his motion for a ruling that he has shown cause sufficient to excuse the procedural default of his *Alleyne* claim (doc. 1098); and his motion for an evidentiary hearing to resolve issues purportedly raised by his sentencing

---

[1] Recently, upon the parties' agreement, the court reduced Mr. Clark's sentence to 235 months in light of Amendment 782.

counsel's affidavit (doc. 1137). As will be explained, the court denies Mr. Clark's § 2255 petition and denies his motion for an evidentiary hearing on the claims presented in his petition. Those motions, then, are denied. As the court will also explain, Mr. Clark's motion for a ruling that he has shown cause for the procedural default of his *Alleyne* claim is moot. Finally, because the court has not relied on the affidavit of Mr. Clark's sentencing counsel in resolving Mr. Clark's § 2255 petition, his motion for a hearing to resolve issues raised by that affidavit is moot.

**Background**

The following summary of the evidence at Mr. Clark's trial is taken from the Circuit's opinion in *United States v. Clark*, 529 Fed. Appx. 927 (10th Cir. 2013). Esteban Magallon–Maldanado and Cesar Bonilla–Montiel headed an extensive drug trafficking organization ("DTO") that bought, sold and transported marijuana, cocaine and methamphetamine. The DTO included about twenty individuals, including Curtis Crow, who ran operations for the DTO in Kansas. The evidence included testimony from several witnesses and records of multiple hotel, airline, and car rental costs incurred by the DTO for drug transportation.

Mr. Crow testified that Mr. Clark, a friend since childhood, was heavily involved with the DTO and knew about his drug dealing. Mr. Crow explained that Mr. Clark worked for him in the DTO and handled his drug sales when he was out of town. On one occasion, Mr. Clark collected $7,000 from a drug buyer for Mr. Crow while he was out of town. Mr. Clark's relationship with the DTO began in October 2008, when Mr. Crow and Tyson Ledford traveled to California to sample marijuana and meet with suppliers. Mr. Crow and Mr. Ledford testified

that Mr. Clark joined them on the trip, during which he tested marijuana and met with suppliers at a restaurant. Mr. Ledford added that, during the trip, Mr. Crow paid the expenses and gambling costs for the group. Mr. Clark and Mr. Ledford flew home ahead of Mr. Crow, and Mr. Clark picked him up from the train station when he returned to Kansas. Mr. Crow testified that he paid Mr. Clark with a half-pound of marijuana for taking the trip.

Mr. Crow also testified that, in November 2008, Mr. Clark agreed to rent a car in his own name and drive it to California with Mr. Crow to exchange $75,000 cash for 80 pounds of marijuana. Mr. Clark initially planned to transport all 80 pounds back to Kansas in the rented car for a $5,000 payment from Mr. Crow. During the trip to California, Mr. Clark helped Mr. Crow and other DTO members package the drugs. He then heard about a cocaine shipment that the DTO had lost as it was being smuggled from Mexico to California. Mr. Bonilla–Montiel and Mr. Crow testified that, after learning this information, Mr. Clark got cold feet and had to be convinced to transport half of what he had originally agreed—40 pounds—in exchange for 3 pounds of marijuana from Mr. Crow and $4,500 from Mr. Bonilla–Montiel.

In 2009, Mr. Clark began distributing marijuana for Mr. Crow in Kansas. Mr. Crow estimated that he supplied Mr. Clark with 20 pounds of marijuana in 2–3 pound increments. Mr. Crow also "fronted" smaller amounts of cocaine to Mr. Clark on credit, which Mr. Clark was supposed to repay after he had sold the cocaine. Mr. Ledford testified that he bought marijuana directly from Mr. Clark and that he saw marijuana and cocaine at Mr. Clark's house. Tiffani DuPaul, Mr. Clark's ex-girlfriend, and Noah Adams, another DTO member, also testified that Mr. Clark sold marijuana, cocaine, and meth for Mr. Crow, and that they saw marijuana and cocaine at Mr. Clark's house. On March 21, 2009, Mr. Clark accompanied Mr. Crow and other

DTO members on a test ride in Mr. Crow's stepfather's plane. Mr. Bonilla–Montiel and Mr. Ledford testified that, during this gathering, Mr. Clark agreed to attend aviation school so that he could pilot the plane if the DTO decided to purchase it to transport drugs.

On April 8, 2009, Mr. Clark overdosed on cocaine and heroin. Rachel Teasley, a friend with whom Mr. Clark used drugs that weekend, testified that she and her boyfriend supplied the heroin, and Mr. Clark supplied them with marijuana and cocaine. She also testified that, after his overdose, he returned to her home where he tried to sell cocaine to her and her boyfriend. He also asked her if she knew anyone who would buy some meth. After his overdose, Mr. Clark owed $10,000 to Mr. Crow. To repay the debt, Mr. Clark worked for Mr. Crow. Mr. Crow, Mr. Ledford, and Mr. Adams all testified that, as part of his debt repayment, Mr. Clark registered in his name a Honda Ridgeline truck that the DTO used for drug transportation. Mr. Ledford added that Mr. Clark told him the Ridgeline had hidden components for transportation of drugs that the police could not detect.

Mr. Crow testified that, also after the overdose, Mr. Clark managed Mr. Crow's sales of meth to another DTO member, Justin Selby, while Mr. Crow was in California. Mr. Bonilla–Montiel testified that before this trip, Mr. Crow left with Mr. Clark a green box that stored marijuana, cocaine, and meth. When Mr. Bonilla–Montiel and Mr. Crow returned from California, they went to Mr. Clark's house to pick up the drug-sale proceeds and the remaining drugs. Mr. Clark did not have enough money to pay for the drugs that he had used, so Mr. Crow asked Mr. Clark to drive a shipment from California to Kansas to work off that debt.

In late April 2009, Mr. Crow no longer wanted to do business with Mr. Clark and took over distribution to Mr. Clark's customers. Mr. Clark relocated from Kansas to Florida, where officers arrested him on other charges.

In March 2010, Mr. Clark was charged in a superseding indictment with one count of conspiracy to distribute and possess with intent to distribute cocaine, methamphetamine and marijuana. In late January 2011, Mr. Clark proceeded to trial with two co-defendants. Two weeks prior to trial, Mr. Clark's trial counsel filed a motion for the appointment of new counsel and to withdraw from his representation of Mr. Clark based on Mr. Clark's apparent belief that his trial counsel lacked the necessary experience to conduct a federal jury trial. The court denied the motion.

The jury convicted Mr. Clark of conspiracy to distribute methamphetamine and marijuana. At Mr. Clark's sentencing hearing, in determining the total amount of drugs for which Mr. Clark was accountable, the court included amounts of marijuana, cocaine and methamphetamine relating to transactions extending from October 2008 through April 2009. The court denied the government's request for a two-level increase for managerial role and denied Mr. Clark's request for a "minor participant" reduction, but the court added a two-level enhancement for use of a firearm, for a final offense level of 36. Combined with a criminal history score of V, the advisory guidelines range was 292-365 months of imprisonment. The court sentenced Mr. Clark to the low-end of the range. On appeal, the Circuit affirmed this court's relevant conduct calculations and the court's refusal to apply a "minor participant" reduction.

In his § 2255 petition, Mr. Clark asserts various claims of ineffective assistance of counsel with respect to the representation he received from his trial counsel, sentencing counsel and appellate counsel. According to Mr. Clark, his trial counsel provided ineffective assistance in connection with Mr. Clark's decision to proceed to trial rather than enter a plea of guilty; failed to communicate with him and to adequately conduct a pretrial investigation into the case; failed to file any substantive pretrial motions; failed to challenge the composition of the jury pool; and failed to utilize any trial strategy or defense at trial. With respect to his sentencing counsel, Mr. Clark contends that counsel failed to challenge his criminal history score and failed to file a motion for a downward variance. Finally, he contends that his appellate counsel failed to raise viable issues on appeal; failed to file a motion for leave to allow Mr. Clark to file a pro se supplemental brief; and failed to challenge the court's relevant conduct findings under *Alleyne*.

**Applicable Standard**

"To establish ineffective assistance of counsel, a defendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that he was prejudiced by the deficient performance." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Applying this standard to Mr. Clark's claims, the court rejects each of those claims without the need for an evidentiary hearing.

**Failure to Advise Mr. Clark of Available Plea Options and Related Consequences**

According to Mr. Clark's affidavit, his trial counsel presented him with a plea offer from the government in November 2010. Unsurprisingly, that offer mandated that Mr. Clark waive his appeal rights and cooperate fully with the government. Mr. Clark avers that, because he was not interested in waiving his appeal rights or cooperating with the government, he asked his trial counsel whether he could plead guilty without cooperating with the government. Mr. Clark avers that his counsel advised him that the government would not enter into any plea agreement that did not require Mr. Clark's cooperation. Mr. Clark further suggests that his trial counsel led him to believe that only two options existed: (1) plead guilty and cooperate; or (2) proceed to trial. According to Mr. Clark, his trial counsel never advised him about the possibility of pleading guilty without a plea agreement and that, in such circumstances, he could retain his right to appeal, he would not have to testify against anyone, and he likely would have received a reduction in his sentence for acceptance of responsibility, resulting in a lesser sentence than he received by proceeding to trial. Mr. Clark contends, then, his Sixth Amendment rights were violated by his counsel's failure to advise him to plead "straight up" to the conspiracy charge.

Although trial counsel's notes (and other portions of Mr. Clark's own affidavit) reflect that he advised Mr. Clark about the option of an open plea, the court assumes for purposes of Mr. Clark's petition that trial counsel did not advise him of this option. The court further assumes without deciding that trial counsel's failure to advise Mr. Clark about the option to plead straight up establishes constitutionally deficient performance. *But see United States v. Faubion,* 19 F.3d 226, 229 (5th Cir. 1994) (failure of counsel to recommend open plea was "well within the bounds of adequate assistance" where open plea offered no discernable advantage); *Diallo v. United States*, 2014 WL 4460364, at *4 (S.D.N.Y. Sept. 10, 2014)

(questioning whether trial counsel is obligated under the Sixth Amendment to inform a defendant of the possibility of an open plea).

Nonetheless, the court rejects Mr. Clark's claim because he has not established prejudice under *Strickland*. Specifically, Mr. Clark has not put forth evidence demonstrating a reasonable probability that he would have entered a straight guilty plea. As the court noted during Mr. Clark's sentencing hearing, Mr. Clark consistently denied any involvement in any drug trafficking activities relating to cocaine or methamphetamine. In his affidavit in support of his § 2255 petition, Mr. Clark continues to insist that although he was involved in limited marijuana trafficking, he had no involvement whatsoever in any cocaine or methamphetamine trafficking and that counsel failed to follow up on facts that would prove that Mr. Clark was not involved in the conspiracy charged. There is no basis for the court to conclude, then, that Mr. Clark would have agreed to plead guilty to the conspiracy charge, particularly without the benefit of a plea agreement. *See Holmes v. United States*, 2015 WL 402957, at *10 (E.D. Va. Jan. 28, 2015) (no prejudice from counsel's alleged failure to advise defendant about ability to enter "straight up" plea of guilty where defendant consistently denied any wrongdoing); *Mann v. United States*, 66 F. Supp. 3d 728, 742 (E.D. Va. Dec. 4, 2014) (no prejudice from counsel's failure to advise defendant about ability to enter open plea where defendant still had not accepted full responsibility for crimes such that there was no record evidence supporting conclusion that defendant would have pled straight up to the indictment); *Diaz v. United States*, 2004 WL 5575163, at *12-13 (S.D. Fla. June 1, 2004) (no probability that defendant would have entered open plea where he continued to protest innocence on conspiracy charges).

For these same reasons, there is no evidence suggesting that the court would have given Mr. Clark a reduction for acceptance of responsibility even if he had entered an open plea. *See Faubion,* 19 F.3d at 229 (no harm shown by proceeding to trial rather than entering open plea; there is no cause-and-effect relationship between entering plea and receiving reduction for acceptance of responsibility); *United States v. Clark*, 2014 WL 2154677, *7 (E.D. Ky. May 22, 2014) (even if counsel failed to advise defendant about open plea option, no prejudice where defendant could not show that court would have given him credit for acceptance of responsibility).[2] In fact, one of Mr. Clark's co-defendants, Ricardo Limon, entered an open plea right before trial. In Mr. Limon's presentence report, the probation officer recommended that the court deny any credit to Mr. Limon for acceptance of responsibility because Mr. Limon, despite his guilty plea, continued to maintain that he was only aware of activities relating to marijuana trafficking and had no knowledge of activities relating to cocaine or methamphetamine. Mr. Limon objected to that recommendation and urged that he should receive credit for accepting responsibility, but he continued to insist that he only knew about marijuana trafficking. At Mr. Limon's sentencing, the court overruled Mr. Limon's objection and refused to give Mr. Limon credit for acceptance of responsibility. As noted by the court during Mr. Limon' sentencing, "acceptance of responsibility is more than pleading guilty; it involves embracing the facts of wrongdoing truthfully." The court, then, denied the adjustment based on Mr. Limon's frivolous denial of relevant conduct. Similarly, because Mr. Clark continues to insist he had no knowledge of cocaine and methamphetamine trafficking, he cannot

---

[2] Mr. Clark also speculates briefly that the court would likely have held him accountable for lower quantities of drugs if Mr. Clark had entered a guilty plea. There is no basis in the evidence to support this conclusory assertion.

establish that the court would have granted Mr. Clark a reduction for acceptance of responsibility even if he had entered an open plea.

In other portions of his affidavit, Mr. Clark states that his trial counsel in fact did explain to him that he could plead guilty without an agreement but that he could "face" 30 years in prison if he did so. Mr. Clark insists that his counsel's prediction was clearly wrong because he ultimately received less time even after proceeding to trial. According to Mr. Clark, if his counsel would have accurately predicted the sentence he would have received by entering an open plea, he would have entered an open plea. In a related vein, he contends that his counsel did not adequately impress upon him that he could end up with a 292-month sentence if he proceeded to trial. But because Mr. Clark was admittedly not open to any agreement that would require him to cooperate with the government, his options were limited to an open plea and proceeding to trial. As explained above, he has not shown any discernible advantage, in hindsight, to either of these options over the other. Thus, he cannot establish any prejudice from his counsel's advice regardless of whether his counsel made an inaccurate prediction about Mr. Clark's sentence. This claim, then, is rejected.


**Failure to Communicate and to Conduct Pretrial Investigation**

Mr. Clark also complains that his counsel visited him infrequently and, when he did visit, that the visits were too short in duration such that Mr. Clark did not have the time to assist meaningfully in his own defense. He also asserts that his counsel was typically "unprepared" for their meetings and refused to hire a private investigator despite Mr. Clark's specific request that he do so. These allegations are entirely conclusory and necessarily fail to establish a claim

for relief. *See United States v. Santurio*, 1998 WL 314569, at *2-3 (10th Cir. 1998) (non-specific and conclusory assertions that counsel failed to hire investigator, failed to interview potential witnesses and otherwise failed to conduct proper investigation insufficient to establish prejudice under *Strickland*).

Mr. Clark further contends that his Sixth Amendment rights were violated because his counsel failed to interview and call to the stand various witnesses who, according to Mr. Clark, could have provided testimony favorable to Mr. Clark. In his petition, he states that he asked his trial counsel to interview Blake Davis, Rachel Teasley, Ryan Cokely, Ryan Ramble and Hank Alsbury who, according to Mr. Clark, "would refute Crow's false testimony." Mr. Clark's assertions do not establish prejudice under *Strickland*. He has not provided affidavits from any of these individuals; he does not suggest that any of these individuals would have been willing to testify at trial on his behalf or waive their Fifth Amendment rights at trial; and he does not state with any specificity how the testimony of these individuals might undermine the testimony of Mr. Crow. *See United States v. Gallant*, 562 Fed. Appx. 712, 715-16 (10th Cir. 2014) (rejecting claim that trial counsel ignored issues that would have helped defendant, such as calling certain individuals as witnesses; petitioner did not establish that witnesses would testify, did not submit affidavits from potential witnesses and did not sufficiently describe nature of testimony). Moreover, Rachel Teasley testified on behalf of the government and told the jury that Mr. Clark supplied her and Blake Davis with cocaine and had asked her if she knew anyone who would buy methamphetamine.

While he does submit the affidavits of Tiffani DuPaul and Tyson Ledford, neither of these individuals avers that they were willing to testify at trial on Mr. Clark's behalf or that they

would have been willing to waive their Fifth Amendment rights at trial.  Moreover, even if these affiants had testified on behalf of Mr. Clark on the topics set forth in their affidavits, that testimony would not have changed the jury's verdict.  Ms. DuPaul avers only that, to her knowledge, Mr. Clark did not possess methamphetamine while they resided together.  Ms. DuPaul testified for the government at trial and her affidavit is consistent with that testimony. She further testified at trial that she lived with Mr. Clark for only a portion of the conspiracy timeframe but that, while they lived together, she observed him in possession of cocaine, marijuana and firearms.  Mr. Ledford avers only that he and Mr. Clark, on April 18, 2009, moved Mr. Clark's furniture, including a couch, from Mr. Clark's residence to Mr. Ledford's house in Olathe, Kansas because Mr. Ledford had purchased that furniture.  According to Mr. Clark, Mr. Ledford's affidavit establishes that Mr. Crow lied on the stand when he testified that he found Mr. Clark, after April 18, 2009, "lying on the couch in a drug haze" because his couch had been moved out of his residence before that time.  This minor detail has no significance in the overall context of the evidence against Mr. Clark and Mr. Clark fails to argue otherwise. Because Mr. Clark has not established that he suffered any prejudice from his counsel's failure to interview Ms. DuPaul and Mr. Ledford or his failure to call these individuals as witnesses at trial, his claim is denied.

**Failure to File Motion to Sever**

While Mr. Clark broadly asserts that his trial counsel did not file "any substantive pretrial motions," the only motion that he addresses with any specificity in his submissions is a motion

to sever.[3]  According to Mr. Clark, his Sixth Amendment rights were violated because his trial counsel failed to file a motion for severance.  Mr. Clark asserts that one of his co-defendants at trial, Justin Selby, was suffering from the effects of methamphetamine withdrawal and that Mr. Clark expressed concern to his counsel that Mr. Selby's condition and appearance would "slop over on him and effect the jury's decision regarding his guilt."  This claim is denied for two reasons.

First, Mr. Clark cannot establish that his counsel acted unreasonably by not filing a motion for severance.  The Tenth Circuit recognizes a presumption in a conspiracy trial that co-conspirators charged together should be tried together.  *United States v. Stiger*, 413 F.3d 1185, 1197 (10th Cir.2005); *United States v. Green*, 115 F.3d 1479, 1487 (10th Cir. 1997) (also noting that severance was not warranted just because a defendant was charged in only two of nine counts).  Mr. Clark has made no showing whatsoever as to why this presumption would have been overcome if his counsel had filed a motion for severance.  Undoubtedly, the court would have denied any motion for severance that was based solely on Mr. Clark's stated concern about the negative spillover effect from his co-defendant's condition and physical appearance.  *See United States v. Lopez*, 100 F.3d 113, 119-120 (10th Cir. 1996).

---

[3]In conclusory fashion, Mr. Clark asserts that his counsel failed to file a "motion for discovery," a "motion for *Brady/Giglio* material," a "motion to compel agents to preserve rough notes," a motion to suppress evidence, a motion for "adequate trial venue," a motion to dismiss the indictment for want of sufficiency, a motion for "disclosure of any confidential informants and for equal access for purpose of interview," and a motion to dismiss for "double jeopardy for multiple conspiracies."  He has not alleged any prejudice from the failure to file any of these motions and these claims are denied.  Moreover, the record reflects, contrary to Mr. Clark's assertion that his counsel failed to file any substantive motions, that his counsel filed a motion for a *James* hearing and a motion for discovery of co-conspirators' presentence investigation reports.

Second, Mr. Clark has not shown any prejudice under the second strong of *Strickland*—

that is, he has not shown that a motion, even if it had been filed, would have been granted and

would have changed the outcome of the case. "When defendants properly have been joined

under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious

risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent

the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506

U.S. 534, 539 (1993). Because severance is a matter of discretion, a defendant bears the "heavy

burden" of showing "real prejudice." *United States v. McConnell*, 749 F.2d 1441, 1444 (10th

Cir. 1984). Other than his allegation about the negative spillover effect from Mr. Selby, Mr.

Clark does not assert any potential prejudice from being tried with his co-defendants. Moreover,

nothing occurred in the course of the trial which suggested that the defendants were prejudiced

by being tried together. In the absence of any showing of prejudice, Mr. Clark's ineffective

assistance claim concerning the failure to file a motion for severance is denied.

**Failure to Object to Composition of Jury Pool**

Mr. Clark complains that his trial counsel, despite his request, failed to object to the

composition of the jury pool which, according to Mr. Clark, consisted of all Caucasian people

with the limited exception of one African-American person and one Hispanic person. He was

ultimately tried by a Caucasian petit jury.[4] The Jury Selection and Service Act of 1968, 28

U.S.C. § 1861 et seq., provides in pertinent part as follows: "It is the policy of the United States

---

[4] Mr. Clark is Caucasian but nonetheless has standing to bring this claim. *Peters v. Kiff*, 407
U.S. 493 (1972).

that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The Jury Act's "fair cross section" requirement parallels a defendant's Sixth Amendment right to trial by an impartial jury and both requirements are generally evaluated under the Sixth Amendment standard. *United States v. Shinault*, 147 F.3d 1266, 1270 (10th Cir. 1998); *see Taylor v. Louisiana*, 419 U.S. 522, 526–31 (1975).

To establish a prima facie violation of the Sixth Amendment fair-cross-section requirement, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).[5] If a defendant proves a prima facie violation, the government bears the burden of proving that attainment of a fair cross section is incompatible with a significant state interest. *See id.* at 368. The Sixth Amendment does not require that "petit juries actually chosen must mirror the community and

---

[5] Mr. Clark also complains that there were a disproportionate number of teachers on the petit jury. Any claim based on this argument is denied as Mr. Clark cannot establish, among other things, that non-teachers allegedly excluded from the jury pool are a "distinctive" group in the community. *See Gilmore v. Macys Retail Holdings, Inc.*, 385 Fed. Appx. 233, 238-39 (3rd Cir. 2010) (no basis to conclude that presence of teachers on jury caused its composition to be unconstitutional or unrepresentative of a fair cross-section of community); *United States v. Goodlow*, 597 F.2d 159, 162 (9th Cir. 1979) (teachers, medical doctors, sole proprietors are not distinctive, cognizable groups for purposes of fair-cross-section requirement).

reflect the various distinctive groups in the population." *Batson v. Kentucky*, 476 U.S. 79, 86 n. 6 (citing *Taylor*, 419 U.S. at 538).

The system which the District of Kansas uses to select petit juries has been the subject of judicial scrutiny and has been found to satisfy the requirements of the Sixth Amendment and 28 U.S.C. § 1861 et seq. *See United States v. Chanthadara*, 230 F.3d 1237, 1256–57 (10th Cir. 2000); *Shinault*, 147 F.3d at 1270–73. Moreover, Mr. Clark has not shown that (1) the representation of African Americans in the jury pool was unfair or unreasonable in relation to the number of African Americans in the community or (2) African Americans were systematically excluded from the jury pool. Without question, then, Mr. Clark's trial counsel did not act unreasonably in failing to raise the objection and the court would have overruled the objection if it had been asserted. Because Mr. Clark cannot establish either prong of the *Strickland* analysis, his claim must be denied. *See United States v. Fortune*, 41 Fed. Appx. 318, 319 (10th Cir. 2002) (counsel's failure to raise an issue cannot be deemed deficient where the issue lacks merit).

**Failure to Develop Trial Strategy or Defense**

According to Mr. Clark, his Sixth Amendment rights were violated by his trial counsel's failure to develop any trial strategy or defense "except for the cross-examination of the government's witnesses." Mr. Clark, however, fails to identify what specific strategy his counsel should have implemented and he failed to identify any viable defense that his counsel could have raised. And while he complains that his counsel "passed" on the opportunity to cross-examine certain witnesses, he fails to articulate any avenues of cross-examination that

would have been valuable to his case but went unaddressed by counsel. Finally, he summarily complains that his counsel's closing argument was "only ten minutes," but counsel clearly and succinctly argued to the jury that the evidence was insufficient to convict Mr. Clark of conspiracy; that he was a user rather than a dealer; that the cooperators who testified against Mr. Clark had a motivation to lie; and that the specific instructions from the court required the jury to give Mr. Clark the benefit of the doubt if there was a "real possibility" that he was not guilty. Mr. Clark does not identify any argument that his counsel failed to make but should have made to the jury, let alone any argument that would have resulted in a not-guilty verdict. Because he has not established any prejudice from these alleged failures, then, his claim must fail. *United States v. Valesquez*, 570 F.ed Appx. 750, 755 (10th Cir. 2014) (denying COA on ineffective assistance claim concerning counsel's failure to develop a viable defense where defendant failed to state what viable defense his counsel could have raised).

**Failure to Challenge Criminal History Score**

Mr. Clark next contends that his sentencing counsel provided ineffective assistance by failing to object to Mr. Clark's criminal history score and, more specifically, the assessment of 2 points for a Florida case in which Mr. Clark was sentenced to 10 days in jail for driving under the influence. This claim clearly lacks merit, as sentencing counsel expressly objected to the assessment in response to the presentence investigation report and argued that objection to the court at sentencing. While that objection was not successful, it was certainly raised by sentencing counsel, thus negating any ineffective assistance claim. *United States v. Miller*, 464 Fed. Appx. 750, 752 (10th Cir. 2012) (failure to obtain favorable outcome not proof of

deficiently performance); *United States v. Mullane*, 226 Fed. Appx. 810, 813 (10th Cir. 2007) (unsuccessful attempts by counsel to persuade court to impose lower sentence does not suggest performance deficient); *United States v. Harfst*, 168 F.3d 398, 402 (10th Cir. 1999) (actual presentation by counsel of defendant's argument for an adjustment, although unsuccessful, likely negates any claim of ineffective assistance of counsel).

**Failure to File Motion for Downward Variance**

Mr. Clark also asserts that his sentencing counsel was ineffective because he failed to file a motion for a downward variance based on the disparity in sentencing of other co-defendants in the case. Specifically, Mr. Clark asserts that co-defendants Maximo Garza, Jose Villanueva-Coyaso, Tyson Ledford, Aaron Johnston, Mary Elizabeth Bardwell, Michael Bigelow; and Noah Adams each were as culpable or more culpable than Mr. Clark and received substantially lower sentences than Mr. Clark received. As Mr. Clark recognizes in his brief, these co-defendants are not similarly situated to him because they each entered guilty pleas and, as highlighted by the government, they each cooperated with the government and testified on behalf of the government. In such circumstances, sentencing counsel did not act unreasonably in failing to request a downward variance on that basis and the court would have denied that motion in any event. *See United States v. Strasser*, 445 Fed. Appx. 109, 115 (10th Cir. 2011) (no inappropriate sentencing disparity where defendant, unlike co-defendant who received lower sentence, did not provide substantial assistance to the government).[6] To the extent Mr. Clark contends that the

---

[6] Notably, Mr. Clark's sentencing counsel did file a motion for a downward variance in light of Mr. Clark's allegedly minimal role in the conspiracy. That motion was denied.

court in all likelihood would have shown Mr. Clark the same "leniency" if his trial counsel had advised him appropriately to plead guilty without a plea agreement, that argument is rejected because the court has already concluded that his trial counsel did not provide ineffective assistance in connection with Mr. Clark's decision to proceed to trial.[7]

**Failure to Raise Viable Issues on Appeal**

Mr. Clark next challenges the representation he received from his appellate counsel and he asserts that his Sixth Amendment rights were violated because his appellate counsel raised only three issues on appeal despite the existence of numerous meritorious arguments available to her and were stronger than the issues she elected to raise. Other than the issue of this court's failure to grant Mr. Clark's motion for new trial counsel, which the court addresses in the next section, Mr. Clark asserts only that his appellate counsel should have challenged the composition of the jury pool. As explained earlier, trial counsel's failure to raise that issue was not unreasonable or prejudicial and, accordingly, appellate counsel's failure to raise that issue on appeal is similarly not unreasonable or prejudicial. This claim is denied. *United States v. Miller*, 464 Fed. Appx. 750, 752 (10th Cir. 2012) ("Without pointing to a winning argument passed over by his attorney, [defendant] cannot make a case for ineffective assistance on

---

[7] In his submissions, Mr. Clark broadly asserts that his sentencing counsel failed to submit any evidence regarding the mitigation of Mr. Clark's sentence "such as" a motion for a downward variance based on sentencing disparities among his co-defendants. To the extent Mr. Clark suggests that his counsel was ineffective for failing to present mitigation evidence distinct from the disparity argument, that claim is rejected in the absence of any indication from Mr. Clark as to what that evidence might have been or what that evidence would have proved.

appeal.") (citing *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) (counsel has no duty to raise meritless issues on direct appeal)).

**Failure to File Motion for Leave to Allow Mr. Clark to File Pro se Appellate Brief**

According to Mr. Clark, his appellate counsel's performance was deficient because she should have sought leave of court to permit Mr. Clark to file a pro se appellate brief concerning the issue of this court's denial of Mr. Clark's motion to replace trial counsel. This claim is rejected because the record reflects that appellate counsel, albeit after Mr. Clark's filing with the Circuit, did ask the Circuit to permit the filing of the supplemental brief. *See United States v. Clark*, 529 Fed. Appx. 927, 936 (10th Cir. 2013). Consistent with its practice, the Circuit denied leave to file the supplemental pro se brief based on appellate counsel's vigorous arguments on the merits of the case through the filing of an opening and reply brief. *See id*. The Circuit's decision would not have been any different had appellate counsel filed the motion for leave prior to or contemporaneously with Mr. Clark's brief. Thus, there is no showing of unreasonable conduct or prejudice from that conduct.

Mr. Clark also suggests that appellate counsel should have raised this issue in her opening brief that she filed with the Circuit. While he summarily contends that the Circuit "would have entertained the issue and ruled on the merits," he does not suggest that he would have prevailed on the merits of the issue and there is no basis to believe that he would have done so. *United States v. Miller*, 464 Fed. Appx. 750, 752 (10th Cir. 2012) ("Without pointing to a winning argument passed over by his attorney, [defendant] cannot make a case for ineffective

assistance on appeal.") (citing *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) (counsel has no duty to raise meritless issues on direct appeal)).  This claim, then, is denied.


### *Alleyne* Claims

In his motion to vacate, Mr. Clark asserts a Sixth Amendment claim under *Alleyne*—an issue that he concedes he did not raise on direct appeal.  He is barred, then, from raising the issue in this § 2255 proceeding unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered.  He asserts that his procedural default is excused because *Alleyne* is a "new rule of constitutional law" that was not available to him at the time of trial or on direct appeal, but he nonetheless cannot establish prejudice or, alternatively, a fundamental miscarriage of justice in light of Tenth Circuit precedent clearly establishing that *Alleyne* does not apply retroactively on collateral review.  *See United States v. Ailsworth*, 610 Fed. Appx. 782, 785 (10th Cir. 2015) (citing cases).   In other words, if *Alleyne* was not available to him before his direct appeal, it is not available to him now regardless of the procedural default issue.  *Alleyne* applies only to those cases that were on direct appeal when Alleyne was decided.  *See United States v. Juarez-Sanchez*, 358 Fed. Appx. 840, 843 n3. (10th Cir. 2014).  His motion for a ruling that he has shown cause sufficient to excuse the procedural default of this claim, then, is moot.

In any event, the record reveals that Mr. Clark's case was on direct appeal when *Alleyne* was decided.[8]  Mr. Clark, then, after the filing of his § 2255 motion, filed a motion to amend his

---

[8] *Alleyne* was decided after oral arguments in Mr. Clark's appeal but before the Circuit issued its decision.

petition to include an ineffective assistance of counsel claim relating to his appellate counsel's failure to raise *Alleyne* on direct appeal. The parties have fully briefed both the appropriateness of the amendment at this juncture (the government asserts that amendment is not appropriate because the claim does not relate back to Mr. Clark's initial petition) and the merits of the proposed ineffective assistance claim. Because the court concludes that Mr. Clark's ineffective assistance claim fails on the merits, it assumes without deciding that the amended claim relates back to the initial § 2255 petition such that the amendment is permissible and timely.

In *Alleyne*, the Supreme Court held that most (but not all) facts that increase a statutory mandatory minimum sentence must be submitted to and found by the jury. *Alleyne v. United States*, 133 S.Ct. 2151, 2162 (2013). The Tenth Circuit has held that *Alleyne* does not apply to facts or enhancements that increase only the advisory guidelines range under the Sentencing Guidelines. *United States v. Cassius*, 777 F.3d 1093, 1097-98 (10th Cir. 2015). In this case, the court did not make any findings that increased the statutory mandatory minimum sentence applicable to Mr. Clark's case. Rather, this court found facts relating to drug quantities attributable to Mr. Clark for the purpose of assessing relevant conduct under the guidelines—an assessment that altered the advisory Guidelines range. Such fact-finding remains permissible after *Alleyne* and, thus, Mr. Clark's appellate counsel did not act unreasonably when she failed to assert an *Alleyne* challenge on appeal and Mr. Clark was not prejudiced by her failure to do so.[9]

---

[9] Mr. Clark also suggests that his appellate counsel should have challenged this court's relevant conduct determination because it included conduct of which the jury had acquitted him. This claim is rejected. The Circuit has expressly recognized that a district court can find that relevant conduct includes co-conspirator conduct that was within the scope of the conspiracy and

In his submissions, Mr. Clark insists that *Alleyne* applies not only to facts that increased a statutory minimum sentence but also to facts that increased an advisory range under the guidelines. In support of his argument, Mr. Clark directs the court to the Tenth Circuit's decision in *United States v. Lake*, 530 Fed. Appx. 831, 832 (10th Cir. 2013) (*Ramon Lake I*). In *Ramon Lake I*, the government interpreted *Alleyne* in the manner suggested by Mr. Clark and, based on that concession, the Circuit remanded the case for new sentencing proceedings because the court had made factual findings relating to sentencing enhancements under the Guidelines. *See id.* By the time that Mr. Lake's co-defendant, Landry Lake, appealed his sentence, however, the government concluded that its interpretation of *Alleyne* was in error and that it had conceded more than it should have in Ramon Lake's appeal. *United States v. Lake*, 556 Fed. Appx. 706, 708 (10th Cir. 2014) (*Landry Lake I*). Without ever addressing the merits of the *Alleyne* issue, the Circuit applied the law of the case doctrine to the appeal of Landry Lake and remanded for resentencing. *Id.* at 708-09. Mr. Clark's reliance on the Circuit's *Lake* decisions, then, is understandable but ultimately not persuasive, as the Circuit has since squarely held that *Alleyne* applies only to facts that increase the mandatory minimum sentence required by statute. *United States v. Lake*, 2015 WL 3407448, at *2 n.2 (10th Cir. May 28, 2015) (*Landry Lake II*) (citing *United States v. Cassius*, 777 F.3d 1093, 1097-98 (10th Cir. 2015)).


**Certificate of Appealability**

---

reasonably foreseeable to the defendant even if a jury acquitted the defendant of that conduct. *United States v. Arias-Santos*, 39 F.3d 1070, 1078 (10th Cir. 1994).

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). With respect to the claims denied above, for the same reasons stated, Mr. Clark has not made a substantial showing of the denial of a constitutional right; the court therefore denies a certificate of appealability with respect to those issues.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Clark's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 1095) is **denied** and the court **denies** a certificate of appealability on the claims raised therein; Mr. Clark's motion for evidentiary hearing in support of his § 2255 petition (doc. 1097) is **denied**; Mr. Clark's motion for a ruling that he has shown cause sufficient to excuse the procedural default of his *Alleyne* claim (doc. 1098) is **moot**; and Mr. Clark's motion for an evidentiary hearing to resolve issues purportedly raised by his sentencing counsel's affidavit (doc. 1137) is **moot.**

**IT IS SO ORDERED.**

Dated this 6th day of October, 2015, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge